IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2015 NOV -4  AM 11:28
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

DEBORAH STEVENS, Trustee for Central Texas
Liberty Media Holdings,
        Plaintiff,

-vs-           Case No. A-15-CA-257-SS

CALVARY CHAPEL OF TWIN FALLS, INC., an
Idaho Corporation,
        Defendant.

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Deborah Stevens's Complaint [#1], Stevens's Motion for Preliminary Injunction [#3], Stevens's Motion for Permanent Injunction [#4], Defendant Calvary Chapel of Twin Falls, Inc.'s Motion to Dismiss [#12]; Stevens's Motion for Entry of Default [#14]; Stevens's Motion for Default Judgment [#15]; Calvary Chapel's Response to Motions for Entry of Default and Default Judgment [#17]; Stevens's Motion for Extension of Time to Respond to Motion to Dismiss and to Reply to Response to Motion for Default [#18]; Stevens's Response to Motion to Dismiss [#19]; Stevens's Reply in Support of the Motion for Default Judgment [#20]; Stevens's Motion to Amend Complaint [#21]; the Court's June 25, 2015 Order to Withdraw Complaint and Voluntarily Dismiss Case [#22]; and Stevens's Response [#23] thereto. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.



## Background

In this pro se lawsuit, Plaintiff Deborah Stevens,[1] as trustee for Central Texas Liberty Media Holdings, sues Defendant Calvary Chapel of Twin Falls, Inc. for broadcasting over radio frequency 90.1 FM in Austin, Texas despite her admission Calvary Chapel has been licensed by the FCC to do so.[2] *See* Compl. [#1]. In her forty-six-page Complaint, Stevens claims to be the exclusive owner of 90.1 FM in the Austin market and that Calvary Chapel has been infringing on her private property rights since it began broadcasting on this frequency without her permission in March 23, 2015. *Id.*

---

[1] This case is not Stevens's first lawsuit with this Court. In 2009, she was one of four plaintiffs to sue an agent of the Federal Communications Commission (FCC). *See Kelton v. Lee*, No. 1:09-CV-918-SS (W.D. Tex. 2009) (First Lawsuit). The FCC had previously contacted each of the plaintiffs to notify them that the radio signals transmitting from their residences in Austin, Texas, on frequency 90.1 MHZ exceeded the limits for non-licensed operation in violation of federal law. *See* Order of Jan. 26, 2010 [#9] at 1–4, First Lawsuit. The plaintiffs responded by suing the FCC agent who signed the notification letters, seeking to enjoin him from "exerting or purporting to act in the name of and in the authority of the FCC (until such time as he proves up his agency for the FCC), and to enjoin the FCC from preventing Plaintiffs from engaging in the broadcasting of radio communications within the borders of the state of Texas, until such time as the FCC demonstrates actual harm to interstate commerce due to Plaintiffs' acts." *Id.* at 7–8. The Court dismissed the lawsuit for lack of subject matter jurisdiction and cautioned the plaintiffs to read and review Rule 11 before filing any other lawsuits. *Id.* at 11.

Subsequently, on December 20, 2010, the FCC filed an enforcement action against the Stevenses (both Deborah and Jerry) in this Court pursuant to 47 U.S.C. § 504(a). *See United States v. Stevens*, No. 1:10-CV-964-SS (W.D. Tex. 2010) (Second Lawsuit). The Stevenses raised various legal challenges to enforcement of the forfeiture order, which this Court determined it lacked jurisdiction to consider. Based on the undisputed facts, this Court entered a final judgment in the amount of $10,000 in favor of the United States on June 23, 2011. The Fifth Circuit affirmed. *United States v. Stevens*, 691 F.3d 620 (5th Cir. 2012).

On January 7, 2014, the Stevenses filed a habeas corpus petition, arguing they were in "custody" or subject to "restraint" because the Government was attempting to enforce this Court's judgment and collect the $10,000 it was owed. *See Stevens v. Wheeler*, No. 1:14-CV-13-SS (W.D. Tex. 2014) (Third Lawsuit). The Court determined: "This action is wholly frivolous, has no basis in law (or, so far as the Court can tell, in reality), and was plainly filed for purposes of delay and harassment." Order of Jan. 10, 2014 [#3] at 2, Third Lawsuit. The Court, pursuant to Rule 11, ordered the Stevenses to withdraw their frivolous application and voluntarily dismiss the case within twenty-one days or incur possible sanctions. *Id.* The Stevenses did not comply, and the Court ordered, in addition to the underlying judgment, the United States have judgment of and be authorized to collect fees and costs in sanctions of $1,268.01 plus interest. Order of Mar. 18, 2014 [#10] at 1, Third Lawsuit. The Court dismissed the case with prejudice. *Id.* at 2.

[2] The "General Theme" posed by Stevens is "May an fcc 'licensee,' whether determined to be acting alone or in concert, league, combination, and conspiracy with the fcc, steal an FM frequency in a particular market from the (well-established) independent owner, possessor, occupier, controller, and/or exclusive user of that frequency in that market?" Compl. [#1] at 1; Mot. Amend [#21-1] Attach. 1 (Proposed First Am. Comp.) at 2.

at 2, 10–13. Calvary Chapel's licensed broadcasts are apparently interfering with Stevens's unlicensed broadcasts and "thrashing" Stevens's programming. *Id.* at 13. Stevens wholly rejects the FCC's authority to issue broadcasting licenses in the first place and characterizes the license itself as a conspiracy between the FCC and Calvary Chapel to "steal" this frequency from her.[3] *See generally id.* Stevens seeks an order barring Calvary Chapel from ever again using 90.1 FM in Austin and also requests $1 million in actual damages and $1 million in punitive damages. *Id.* at 44.

Stevens accompanied her Complaint with a motion for temporary restraining order, motion for preliminary injunction, and motion for permanent injunction, all of which sought to prohibit Calvary Chapel from ever using 90.1 FM in Austin. *See* Mot. TRO [#2]; Mot. Prelim. Inj. [#3]; Mot. Permanent Inj. [#4].[4]

Calvary Chapel timely filed a Motion to Dismiss the Complaint on the basis of lack of jurisdiction and for failure to state a claim, or in the alternative, for judgment on the pleadings. *See* Mot. Dismiss [#12].

Stevens subsequently moved for default on the grounds Calvary Chapel failed to timely respond to her pleadings. *See* Mot. Entry Default [#14]; Mot. Default J. [#15]. In response, Calvary Chapel explained it attempted to serve its timely filed motion to dismiss at Stevens's address of

---

[3] Stevens seeks leave to file an Amended Complaint that is substantially similar to her Complaint, but joins the FCC and various officials as defendants, asserts a direct challenge to the FCC's licensing regulations and requests an injunction ordering the FCC to revoke Calvary Chapel's license and preventing the FCC from issuing a license to any party on this frequency in the future. *See* Proposed First Am. Compl. Stevens's proposed Amended Complaint is futile because it does not cure the fatal deficiencies in her claims. Joining the FCC to this suit alleging FCC misconduct may satisfy the basic requirement that all necessary parties participate in the suit, *see* FED. R. CIV. P. 19, but it does nothing to cure the fact that this Court has no jurisdiction over Stevens's complaints against the FCC and has already unfavorably adjudicated Stevens's claimed right to use 90.1 FM without an FCC license on multiple occasions.

[4] The Court denied Stevens's motion for temporary restraining order on jurisdictional grounds, but reserved ruling on the motions for preliminary and permanent injunctions until after Calvary Chapel's responsive pleadings. *See* April 8, 2015 Order [#8] at 3–4.

record, but was informed by the U.S. Postal Service that "no such number" existed. Resp. Mot. Entry Default [#17] at 2. After Stevens failed to return its telephone calls, Calvary Chapel performed a background check on Stevens and effectuated service at an alternative address. *Id.* at 3–4. Stevens refused to withdraw her motion for default judgment despite learning Calvary Chapel timely filed a response in compliance with the Federal Rules (and, consequently, that default was not warranted). *See* FED. R. CIV. P. 55; FED. R. CIV. P. 12.[5]

On June 25, 2015, the Court entered an order giving Stevens thirty (30) days to withdraw her Complaint and associated motions and voluntarily dismiss the case. *See* June 25, 2015 Order [#22] at 5. As the basis for this order, the Court cited Rule 11 and Stevens's "specific intent to abuse the litigation process to harass, burden, and impose unnecessary costs on Calvary Chapel." *See id.* at 4. On July 28, 2015, Stevens filed her response to the Court's June 25, 2015 Order asserting she is "withdrawing nothing . . . [and] voluntarily dismissing nothing." *See* Resp. to June 25, 2015 Order [#23] at 12, 79. Consistent with her proclamations, Stevens has not withdrawn her Complaint and has not voluntarily dismissed this case.

I.      **Legal Standards**

A.      **Rule 12(b)(1)**

Federal district courts are courts of limited jurisdiction, and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) allows a party to assert a lack of subject matter jurisdiction as a defense to suit. The burden of establishing

---

[5] Further, and perhaps even more tellingly, Stevens has continued to list this nonexistent address on the signature block of each document filed with the Court despite learning that mail is undeliverable at this location. *See, e.g.*, Resp. to June 25, 2015 Order [#22] at 86.

subject matter jurisdiction by a preponderance of the evidence rests with the party seeking to invoke it. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008).

In evaluating a challenge to subject matter jurisdiction, the Court is free to weigh the evidence and resolve factual disputes so that it may be satisfied jurisdiction is proper. *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). In conducting its inquiry the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Id.* The Court must take the allegations in the complaint as true and draw all inferences in the plaintiff's favor. *Saraw P'ship v. United States*, 67 F.3d 567, 569 (5th Cir. 1995); *Garcia v. United States*, 776 F.2d 116, 117 (5th Cir. 1985). Dismissal is warranted if the plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject matter jurisdiction. *See Saraw*, 67 F.3d at 569; *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992).

**B.    Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining

plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.   Application

Having thoroughly reviewed Stevens's Complaint, Calvary Chapel's Motion to Dismiss, and Stevens's Response to this Court's June 25, 2015 Order, the Court can find no grounds for sustaining Stevens' frivolous and harassing pleadings. *See Kingery v. Hale*, 73 F. App'x 755, 755 (5th Cir. 2003) ("A complaint is frivolous if it lacks any arguable basis in either law or fact.").

Stevens claims exclusive ownership over 90.1 FM in Austin. She invents five nonexistent legal claims[6] against Calvary Chapel for interfering with her radio broadcasts on 90.1 FM and seeks an injunction ordering Calvary Chapel off that frequency. This is nonsense. Stevens is not the

---

[6] Stevens's claims are as follows: (1) "Damage to Good Will, Commercial Reputation, and Listenership"; (2) "Expenses for Emergency Activity to Maintain Programming about Tortious Interference"; (3) "Trespass, the electronic analogy"; (4) "Wrongful Taking – Conversion, the electronic analogy"; and (5) "Conspiracy Regarding Rights Violations *(Bivens).*" *See* Compl. [#1] at 28–39.

exclusive owner of 90.1 FM in Austin and she does not otherwise have any independent property interest in this frequency. *See, e.g.*, 47 U.S.C. § 301 ("It is the purpose of this chapter . . . to maintain the control of the United States over all channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time . . ."). This Court has already made clear that any transmission of a broadcast signal in excess of 250 microvolts per meter at a distance of three meters can only be made pursuant to an individual license granted by the FCC under 47 U.S.C. § 301 and that Stevens has no such license. *See* Second Lawsuit [#62]; *see also* 47 C.F.R. § 15.239. Calvary Chapel cannot be liable for "stealing" anything that does not actually belong to Stevens. Because Stevens admits Calvary Chapel has a license to broadcast on the frequency at issue and that she does not, her own pleadings establish she is not entitled to any relief. *See* Compl. [#1] at 1.

Further, and as in her previous litigation before this Court, Stevens's real claim is that the broadcasting license issued by the FCC is a conspiracy between the FCC and Calvary Chapel to "steal" her property. *Id.* at 1. As before, Stevens is attempting an "end run" around the procedural and jurisdictional prerequisites to her claims by challenging the constitutionality of the FCC's licensing regime in this Court.[7] As before, this Court does not have jurisdiction to decide such an issue: federal law gives the courts of appeals exclusive jurisdiction to review all final orders of the FCC. *See* 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1) (providing "the court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity

---

[7] As stated by the Court in *Kelton v. Lee*, Stevens has "other avenues for relief." First Lawsuit [#9] at 11. Stevens "could have obtained review by applying for a license and asking for a waiver of the regulations; if the application was denied, rejection of their request would have permitted appeal to the D.C. Circuit. Likewise, they could have filed a petition for rulemaking and, if the petition was denied, seek judicial review in a court of appeals." *Id.*

of . . . all final orders of the [FCC] made reviewable by section 402(a) of title 47"). Consequently, the Court lacks subject matter jurisdiction over this case.

As a result of the foregoing, and for the reasons stated in the Court's June 25, 2015 Order, the Court does not have jurisdiction to entertain this lawsuit and, even if it did, Stevens has failed to state a claim upon which relief can be granted. Stevens's Complaint is DISMISSED WITH PREJUDICE.

### III.     Sanctions

The Court has repeatedly warned Stevens that filing or pursuing frivolous and vexatious litigation in this Court may result in the imposition of court costs, monetary sanctions, or barring Stevens from filing lawsuits in this Court without obtaining the permission of a District Judge of this Court or a Circuit Judge of the Fifth Circuit. *See, e.g.*, June 25, 2015 Order [#22] at 5; First Lawsuit [#9] at 11–12; Third Lawsuit [#3] at 2. On January 26, 2011, when it dismissed her first lawsuit, the Court warned Stevens to read and review Federal Rule of Civil Procedure 11 before filing other lawsuits in this Court. *See* First Lawsuit [#9] at 11–12. Despite this warning, Stevens filed a habeas corpus petition to prevent the government from enforcing the $10,000 final judgment in favor of the United States entered in the subsequent enforcement action. *See* Third Lawsuit [#1]. Pursuant to Rule 11, the Court ordered Stevens to withdraw her application and dismiss the case or incur possible sanctions. *See id.* [#3]. Stevens refused to dismiss the case and was sanctioned. *Id.* [#10] at 1.

In this case, Stevens has again filed a frivolous lawsuit and refused to withdraw her pleadings despite the Court's admonition that failing to do so would risk further sanctions. Indeed, the Court specifically warned Stevens on June 25, 2015 her Complaint was entirely frivolous and without any arguable basis in law and gave her a thirty-day deadline to withdraw her Complaint and voluntarily

dismiss the case. *See* June 25, 2015 Order [#22] at 5. The Court's order outlined the reasons Stevens knew this Court did not have jurisdiction over her claims and, even if it did, why her Complaint would be subject to dismissal. *See id.* Importantly, the Court advised Stevens she could not represent the interests of trust because she is not a lawyer and she could only provide pro se representation of her own interests. *Id.* at 3 n.3; *see also In re Liberty Trust Co.*, 130 B.R. 467, 468 (W.D. Tex. 1991) (finding the right to appear pro se is personal and rejecting a non-lawyer trustee's argument that he could appear on behalf of the trust (citing *C.E. Pope Equity Trust v. United States*, 818 F.2d 696 (9th Cir. 1987))). The Court cautioned Stevens pursuant to Rule 11 that if she did not withdraw her Complaint and voluntarily dismiss this case, "strong sanctions may issue, including but not limited to monetary sanctions and an order declaring Plaintiff a vexatious litigant and barring Plaintiff from making any further filings or bringing any new lawsuit in the Western District of Texas without first seeking leave of court." *Id.* at 5.

Stevens again disregarded the Court's warning and instead filed an incomprehensible eighty-seven-page response outlining why she "objects to everything" in the Court's June 25, 2015 Order and asserting she is "withdrawing nothing . . . [and] voluntarily dismissing nothing." *See* Resp. to June 25, 2015 Order [#23] at 12, 79. Stevens accuses the Court of "joining the conspiracy" to steal 90.1 FM from her and demands the undersigned "recuse or self-disqualify under the 'vexatious judge' standard." *Id* at 85.[8] As best the Court can decipher, Stevens's Response is void of any coherent defense as to why this Court has jurisdiction over any of her claims, why her suit is not

---

[8] In addition to serving Calvary Chapel, it appears Stevens has attempted to report the undersigned for unethical behavior by serving her response on the Honorable Chief Justice of the United States Supreme Court Re: Rule 11 expansion "Vexatious Judge," the Fifth Circuit Clerk of Court, Attn Judicial Council Informal Complaints, the Principal Deputy Assistant Attorney General, and various state ethics bodies. *See* Resp. to June 25, 2015 Order [#23] at 86–87. This disregard for state and federal resources makes a mockery of the courts and serves to highlight the abusive nature of Stevens's litigation.

barred under the doctrine of res judicata, why her motions for entry of default and default judgment are not frivolous, why she is entitled to represent the interests of a trust despite not being licensed as an attorney, and finally why she should not be sanctioned for filing vexatious, harassing, and duplicative pleadings. Further, and perhaps most importantly, Stevens has failed to explain her basis for suing Calvary Chapel—an organization licensed by the FCC to broadcast on 90.1 FM—thereby forcing it to incur substantial time and expense to defend against her futile campaign to establish personal property rights in 90.1 FM and to topple the FCC's well-established licensing authority.

Rule 11 permits the Court to impose an appropriate sanction if a pleading, motion, or other paper is presented for any improper purpose, such as to harass or needlessly increase the cost of litigation, or if the claims or arguments therein are frivolous. *See* FED. R. CIV. P. 11(b). "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of federal court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The Court must carefully choose sanctions that further the purpose of the Rule and should impose the least severe sanctions that would adequately deter its violation. *See Thomas v. Capital Security Servs., Inc.*, 836 F.2d 866, 875–76 (5th Cir. 1988). When warranted, sanctions may include an order directing payment to an opposing party of some or all of the reasonable attorney's fees or costs incurred as a result of the violation. *See Merriman v. Security Ins. Co. of Hartford*, 100 F.3d 1187, 1191 (5th Cir. 1996); FED. R. CIV. P. 11(c)(2).

The Court also possesses inherent power to "protect the efficient and orderly administration of justice . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *See Mendoza v. Lynaugh*, 898 F.2d 191, 195–97 (5th Cir. 1993). No pro se litigant has the "license to harass others, clog the judicial

machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Hous., N.A.*, 808 F.2d 358, 360 (5th Cir. 1986).

In addition to monetary sanctions, "[a] district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation." *Baum v. Blue Moon Ventures*, 513 F.3d 181, 187 (5th Cir. 2008). In determining whether to impose such an injunction, the Court must weigh all of the relevant circumstances, including the following four factors: (1) the party's history of litigation, in particular whether she has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions. *See id.* at 189. A pre-filing injunction must be "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Id.* at 187.

Despite Stevens's repeated claim this is a "matter of first impression," this lawsuit marks the fourth time she has been involved in litigation over the right to broadcast unlicensed radio transmissions over 90.1 FM in the Austin market. *See* Note 2, *supra*. In each lawsuit, Stevens has demonstrated a blatant disregard for the FCC's authority, this Court's orders, and the rule of law by continuing to make frivolous arguments in support of claims she has been told cannot be brought in federal district court. Because Stevens is aware this Court does not have jurisdiction over her claims, and because she is similarly aware federal law prevents her from broadcasting over 90.1 FM without a license, these lawsuits have uniformly been brought in bad faith and are patently abusive. Her continued filings drain the Court's valuable resources and incur substantial costs on private defendants who are not acting in violation of the law. This Court is not an appropriate forum to wage ideological warfare against the FCC's broadcast licensing regime.

The Court finds monetary sanctions alone are not adequate to deter Stevens from continuing to file frivolous and harassing litigation in the future. Stevens has already been subject to a $10,000 judgment plus additional sanctions resulting from the FCC enforcement action pursuant to 47 U.S.C. § 504(a) and yet, by her own admission, she continues to operate an unauthorized radio broadcast on 90.1 FM in violation of federal law. There is no reason to think a further financial burden will cause her to cease filing frivolous lawsuits against innocent defendants to establish imaginary property rights.

Finally, Stevens's attempt to disguise herself as a "trustee," ostensibly in order to avoid the force of this Court's previous orders, suggests the scope of the Court's pre-filing injunction must be broad. Stevens has been involved in lawsuits similar to the one currently before the Court and has dragged more than one private party into frivolous litigation. A pre-filing injunction barring Stevens from filing lawsuits in this district without leave of court is the only sanction that will deter future frivolous lawsuits. See *Farguson*, 808 F.2d at 360 ("[A] broader injunction . . . may be appropriate if a litigant is engaging in widespread practice of harassment against different people." (citing *Day v. Allstate Ins. Co.*, 788 F.2d 1110, (5th Cir. 1986))).

## Conclusion

Accordingly,

IT IS ORDERED that Plaintiff Deborah Stevens's Complaint [#1] is DISMISSED WITH PREJUDICE;

IT IS FURTHER ORDERED that all other pending motions are DISMISSED AS MOOT;

Pursuant to Rule 11 of the Federal Rules of Civil Procedure and the inherent discretion of this Court, IT IS FURTHER ORDERED, Defendant Calvary Chapel is

-13-

authorized to collect fees and costs in the above-styled cause of ONE THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($1,500.00), plus interest at the rate of 0.12 percent per annum until paid, as sanctions for the filing of this lawsuit and its continued prosecution after appropriate notice of this Court to dismiss the same;

IT IS FINALLY ORDERED that Plaintiff Deborah Stevens, in any capacity, is BARRED from filing any additional lawsuits in the Western District of Texas without first obtaining leave from a Federal District Judge in the Western District of Texas, Austin Division, or a Judge of the United States Court of Appeals for the Fifth Circuit.

SIGNED this the 4th day of November 2015.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE